1
2
3
4
5
6
7
8
9
10
11
12
13
14

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| MARGARET K. WILSON, | NO.  C09-1322-JCC-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

15
16
17
18
19
20
21

        Plaintiff Margaret K. Wilson appeals the final decision of the Commissioner of the
Social Security Administration ("Commissioner") which denied her applications for Disability
Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI
of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an
administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that
the Commissioner's decision be REVERSED and REMANDED for further proceedings.

22
                        I.        FACTS AND PROCEDURAL HISTORY
23
        At the time of her second administrative hearing, hearing, plaintiff was a 57 year-old
24
woman with an Associate of Arts and Bachelor of Arts degree.  Administrative Record ("AR")
25
at 92, 622.  Her past work experience includes employment as a copy consultant/sales clerk
26
cashier at Kinko's; copy consultant; sales clerk/cashier, motel housekeeper, apprentice painter,

REPORT AND RECOMMENDATION - 1

an electronics assembler, a nursing assistant, and a food service worker.  AR at 165-202.
Plaintiff was last gainfully employed as a food service worker at Del Taco from August 20, 2004 through August 2006.  AR at 205.

Plaintiff asserts that she is disabled due to cervical disc disease, degenerative disc disease of the lumbar spine, left great toe bunion, major depressive disorder, rule out bipolar disorder, social phobia, post traumatic stress disorder, and a pain disorder.  AR at 18.

Plaintiff filed her applications for DIB and SSI on June 15 and 20, 2005, alleging an onset date of disability beginning February 1, 2005.  AR at 92-94, 577-79.  The onset date was subsequently amended by plaintiff to September 1, 2006.  AR at 15, 620.  The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 82-86, 76-80.  Plaintiff requested a hearing, which took place on November 20, 2007, but plaintiff failed to appear.  AR at 60.  The claims were dismissed on December 15, 2007, based on the failure to appear.  An appeal to the Appeals Council was successful, because the original notice of hearing had not been sent to plaintiff's attorney.  AR at 25-27.

A second hearing was held on July 11, 2008.  AR at 616-76.  On September 3, 2008, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on a finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 15-24.

Plaintiff was found to be disabled as of August 29, 2008, based on a subsequent application filed on December 27, 2009.  Plaintiff's administrative appeal of the ALJ's decision which is the subject of this suit was denied by the Appeals Council on August 28, 2009, AR at 8-10, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 4.

REPORT AND RECOMMENDATION - 2

## II.      JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.      STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1)  the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2)  there are no outstanding issues that must be resolved before a determination of disability can be made; and (3)  it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

REPORT AND RECOMMENDATION - 3

1

## IV.     EVALUATING DISABILITY

2

As the claimant, Ms. Wilson bears the burden of proving that she is disabled within the

3
meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th

4
Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in

5
any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

6
expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§

7
423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

8
are of such severity that she is unable to do her previous work, and cannot, considering her age,

9
education, and work experience, engage in any other substantial gainful activity existing in the

10
national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-

11
99 (9th Cir. 1999).

12
The Commissioner has established a five step sequential evaluation process for

13
determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§

14
404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At

15
step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at

16
any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step

17
one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

18
§§ 404.1520(b), 416.920(b).[1]  If she is, disability benefits are denied.  If she is not, the

19
Commissioner proceeds to step two.  At step two, the claimant must establish that she has one

20
or more medically severe impairments, or combination of impairments, that limit her physical

21
or mental ability to do basic work activities.  If the claimant does not have such impairments,

22
she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe

23
impairment, the Commissioner moves to step three to determine whether the impairment meets

24
or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d),

_____

25
[1] Substantial gainful activity is work activity that is both substantial, i.e., involves
significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. §

26
404.1572.

REPORT AND RECOMMENDATION - 4

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On September 3, 2008, the ALJ issued a decision finding the following:

1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2011.

2.     The claimant has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date.

3.     The claimant has the following severe impairments: cervical disc disease, degenerative disc disease of the lumber [sic] spine, left great toe bunion, major depressive disorder, rule out bipolar disorder, social phobia, post traumatic stress disorder, and a pain disorder.

4.     The claimant does not have an impairment or combination of impairments that meets with or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.     After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in

20 CFR 404.1567(b) and 416.967(b) except she can perform postural activities occasionally and she can balance frequently.  She can never climb ladders, ropes or scaffolds.  She can reach overhead occasionally.  She can adequately perform the mental activities generally required by competitive, remunerative unskilled work as follows: she can understand, remember and carry out simple instructions compatible with unskilled work; she would have average ability to perform sustained work activities (i.e., can maintain regular attention and concentration; persistence and pace) in an ordinary work setting on a regular and continuing basis (8 hours a day, for 5 days a week or an equivalent schedule) within customary tolerances of employer rules regarding sick leave and absence; she can make judgments commensurate with the functions of unskilled work, i.e., simple, work-related decisions; she can respond appropriately to supervision, co-workers and work situations; and she can deal with changes, all within a routine work setting.  She cannot deal with the general public as in a sales position; incidental contact with the general public would not be precluded.

6.   The claimant is capable of performing past relevant work as a photocopy machine operator and electronics assembler.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.   The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2006 through the date of this decision.

AR at 17-23.

## VI.   ISSUE ON APPEAL

The principal issue on appeal is whether the ALJ erred in determining that plaintiff was capable of performing work at a light level of physical exertion rather than a sedentary exertional level, and the concomitant RFC at Step 4, consistent with this determination.  This requires consideration of whether the ALJ properly considered and evaluated the opinions of plaintiff's medical providers.[2]

---

[2] In her opening brief, plaintiff asserted as a separate error at Step 4 the issue of whether there were sufficient jobs in the national economy.  In her reply brief, she withdrew this argument, and reiterated the issue was whether the RFC was properly determined.  Dkt. 28 at 10.

REPORT AND RECOMMENDATION - 6

1

2

VII.    DISCUSSION

3
        An RFC is the "maximum degree to which [a plaintiff] retains the capacity for

4
sustained performance of the physical-mental requirements of jobs."  20 C.F.R. 404, Subpt. P,

5
App. 2 §200(c).  It is an administrative decision as to the most a plaintiff can do, despite her

6
limitations. SSR 96-8p.  The ALJ must assess all of the relevant evidence, including evidence

7
regarding symptoms that are not severe, to determine if the claimant retains the ability to work

8
on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week.  *Reddick*, 157

9
F.3d at 724; *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96-8p.

10
        Here, the ALJ determined that plaintiff had the RFC "to perform light work as defined

11
in 20 CFR 404.1567(b) and 416.967(b) except she can perform postural activities occasionally

12
and she can balance frequently.  She can never climb ladders, ropes or scaffolds.  She can

13
reach overhead occasionally.  She can adequately perform the mental activities generally

14
required by competitive, remunerative unskilled work as follows: she can understand,

15
remember and carry out simple instructions compatible with unskilled work; she would have

16
average ability to perform sustained work activities (i.e., can maintain regular attention and

17
concentration; persistence and pace) in an ordinary work setting on a regular and continuing

18
basis (8 hours a day, for 5 days a week or an equivalent schedule) within customary tolerances

19
of employer rules regarding sick leave and absence; she can make judgments commensurate

20
with the functions of unskilled work, i.e., simple, work-related decisions; she can respond

21
appropriately to supervision, co-workers and work situations; and she can deal with changes,

22
all within a routine work setting.  She cannot deal with the general public as in a sales position;

23
incidental contact with the general public would not be precluded."  AR at 20.  Plaintiff argues

24
this overstates her RFC, in that her physical limitations dictated no more than a sedentary

25
exertional level of work and the ALJ reached the conclusion she could work up to a "light"

26

1  level of work only by misinterpretation and ignoring the medical evidence and then

2  misapplying the required medical hierarchy of medical evidence.

3     A.  <u>Standard of Review for Medical Evidence</u>

4    As a matter of law, more weight is given to a treating physician's opinion than to that

5  of a non-treating physician because a treating physician "is employed to cure and has a greater

6  opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d

7  747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating

8  physician's opinion, however, is not necessarily conclusive as to either a physical condition or

9  the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

10 *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining

11 physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

12 contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*,

13 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough

14 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

15 making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than

16 merely state his conclusions. "He must set forth his own interpretations and explain why they,

17 rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

18 Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*,

19 157 F.3d at 725.

20   The opinions of examining physicians are to be given more weight than non-examining

21 physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the

22 uncontradicted opinions of examining physicians may not be rejected without clear and

23 convincing evidence. *Id.* An ALJ may reject the uncontroverted opinions of an examining

24 physician only by providing specific and legitimate reasons that are supported by the record.

25 *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

26

Plaintiff argues that the ALJ erred in his assessment of the opinions of Drs. Michael Carraher, Jim Johnson, and Mark Heilbrunn and the opinion of treating physician's assistant Denise Plaisier. Plaintiff also argues that the ALJ erred by giving greater weight to a non-examining DDS physician than to the opinions of the examining and treating providers.

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. SSR 96-6p. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 1.    Dr. Michael Carraher

Dr. Carraher is an examining physician who saw plaintiff for the Idaho Disability Determinations Service ("DDS") in October 2005. AR at 403-05. Dr. Carraher noted that plaintiff had "moderate to severe degenerative disc disease at L3-L4 with levoscoliosis." AR at 403. He concluded she has physical impairments of probable osteoarthritis of the cervical spine, degenerative changes of the lumbar spine, limited range of motion of the left shoulder with possible rotator cuff tear, knee pain. AR at 405. He concluded that she should be restricted to light-duty and "not have to do any prolonged standing." *Id.*

Plaintiff argues that the RFC failed to take into account the prolonged standing restrictions mentioned by Dr. Carraher. Dkt. No. 18 at 8. This is true. Moreover, the RFC determined by the ALJ directly contravenes the prolonged standing limitations directed by Dr. Carraher. When the ALJ posed a hypothetical to the vocational expert ("VE"), he asked the VE to assume that plaintiff could "stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday." AR at 663. The Commissioner claims that this evidence was

neither significant nor probative, and therefore the ALJ was not required to explain his decision not to accept the limitation.  Dkt. No. 26 at 11.  The Commissioner contends that the probative value is diminished because the evaluation took place before her amended alleged onset date and she continued her employment for eleven months thereafter, only quitting her job to move to Washington.  The Commissioner also argues that Dr. Carraher did not discuss what led to his conclusion.

The record is silent on why the ALJ ignored Dr. Carraher's prolonged standing limitations.  Perhaps it was for the reasons urged by the Commissioner.  However, the ALJ did not provide these as the reasons.  It is just as probable that the ALJ overlooked these restrictions.  In any event, the ALJ erred by reaching the conclusion that plaintiff could perform at a light exertional level of work while ignoring Dr. Carraher's opinion that plaintiff be restricted from prolonged standing.

> ### 2.    *Jim Johnson, M.D.*

In May 2006, plaintiff was seen by Dr. Johnson, after a workplace injury.  AR at 437-40.  Dr. Johnson restricted her to lifting 10 pounds maximum, on an occasional basis, with no above-shoulder lifting, and restricted her further to no more than 10 pounds maximum of pushing or pulling on an occasional basis.  *Id.*  The ALJ ignored the report of Dr. Johnson.

The Commissioner argues that because this occurred before her amended alleged onset date, and because plaintiff was subsequently released to work, Dr. Johnson's reports are not probative to the time period at issue.  Dkt. No. 26 at 12.

The amended alleged onset date began on September 1, 2006 (AR at 15, 620).  As discussed above, Ms. Wilson was found disabled due to a second application, effective August 29, 2008.  AR at 9.  Thus, the time period at issue in this case is from September 1, 2006 through August 28, 2008.  Moreover, the issue before the Court is not resolved by a determination that plaintiff was released to work.  The question is not whether the plaintiff was completely unable to work as of that date.  The issue, instead, is whether the plaintiff's RFC

was determined properly when the ALJ concluded that she had the ability to work at a "light" exertional level, rather than, as alleged by plaintiff, only a "sedentary" work level.  Dr. Johnson saw the plaintiff four months before her amended alleged onset date, and limited her to a less-than-light level of exertional activity.  On August 2, 2006, R. Maxwell, D.O. examined her, but also assessed the same lifting and pushing and pulling restrictions.  AR at 430A.  This was less than one month before her alleged amended onset date.  Five days later, plaintiff reported to J. Royce Ely, A.R.N.P. that she was still having severe back pain as a result of her work injury and was unable to sleep at night.  AR at 548.  The ALJ did not consider any of these reports when making his RFC determination.  All of them are relevant and probative to the issue involving the plaintiff's RFC.

Finally, the failure of the ALJ to consider the opinions cannot be excused as non-probative simply because they predated the alleged amended onset date.  Here, they were very close to the onset date.  Moreover, the ALJ cannot simply cherry-pick evidence.  To support his RFC determination, he cited a number of reports that substantially predated the amended onset date.  *See e.g.*, AR at 318-25, 326.  This does not mean that the ALJ has to give the reports of Drs. Johnson and Maxwell and Nurse Ely controlling weight.  It does mean, however, that their opinions cannot simply be ignored as non-probative when other medical reports even earlier in time than these are used, in part, to support the "light" exertional level.

### 3.   *Denise Plaisier, PA-C*

Ms. Plaisier is a physician's assistant who saw plaintiff and issued an opinion dated January 2008, limiting plaintiff to sedentary work, based on a diagnosis of arthropathy of the neck, shoulder, back and pelvis.  AR at 480-85.  The ALJ dismissed her opinions, stating "Ms. Plaisier noted multiple health concerns 'all of which could not be addressed today.'  I discount the limitation to sedentary work as it was not based on a full evaluation.  With appropriate orthotics, the claimant is not limited to sedentary work."  AR at 23.

1    The Commissioner argues that as a physician's assistant, Ms. Plaisier is not an

2    acceptable medical source.  20 C.F.R. §§404.1513(d); 416.913(d); Social Security Ruling

3    ("SSR") 06-03.  Nevertheless, the Commissioner also concedes that her opinions may be given

4    "some weight" depending on the facts of the case.  SSR 06-03p.

5         The Commissioner asserts that the ALJ "properly considered Ms. Plaisier's opinion

6    regarding plaintiff's limitations and accepted it to the degree it was consistent with plaintiff's

7    credible complaints."  Dkt. No. 26 at 13.  Actually, the ALJ did nothing of the sort.  The ALJ

8    rejected ("discounted") the opinion, and provided two reasons to justify the decision:  (1) that it

9    was not based on a "full evaluation," and (2) that proper use of orthotics would raise plaintiff's

10   exertional level.

11        The ALJ erred in his treatment of Ms. Plaisier's opinion.  First, Ms. Plaisier noted "she

12   has <u>multiple</u> health concerns, all of which could not be addressed today."  AR at 483 (emphasis

13   in original).  The fact that Ms. Plaisier was unable to address all of plaintiff's multiple heath

14   concerns does not provide a valid basis to reject those findings as to which Ms. Plaisier offered

15   an opinion, particularly when the opinion is supported by an accompanying incapacity range of

16   joint motion examination, as was true in this case.  AR at 484-85.  In other words, the fact that

17   Ms. Plaisier, for example, was unable to address plaintiff's headaches or irritable bowel

18   syndrome (AR at 480) has no effect on the validity of the opinion she expressed on plaintiff's

19   shoulder, back, pelvis and neck limitations when she found plaintiff to be restricted to a

20   sedentary exertional level.

21        The other basis proffered by the ALJ to reject Ms. Plaisier' opinion was the ALJ's

22   opinion that proper orthotics would raise her exertional level to being capable of handling light

23   work.  There is no medical support for this statement.  The only apparent reference to orthotic

24   support comes from a report from Steve Segall.  AR at 461-68.  However, Mr. Segall is not an

25   acceptable medical source.  He offers a lay opinion, but there is nothing in the record to

26   support his conclusion.  The Commissioner (but neither the ALJ nor Mr. Segall) point to AR

488 and 510 to prop up Mr. Segall's rather bold assertion.  However, AR 510 is dated June 2008, approximately 2 months after Mr. Segall's report, and it simply states that plaintiff has been casted for orthotics.  AR 488 is a report dated approximately 2 months prior to Mr. Segall's report, and it only says that "She is here today for follow up on low back and left hip pain.  This has become a little bit worse since I last saw her or at least it has been persistent.  This has been a *chronic problem* for her.  She says that her left leg is shorter than her right leg.  She is supposed to be wearing an orthotic in her left shoe but she lost it.  She says it is throwing her pelvis out of whack.  On evaluation from a couple of weeks ago, she showed marked limitations in range of motion and very tense tight muscles."  AR at 488. (emphasis added)

This is not substantial evidence, by itself, from which an ALJ can properly deduce that use of orthotics would elevate the plaintiff's exertional level to light work from sedentary work.  This is particularly true in light of the evidence tendered by Dr. Carraher, an acceptable medical source and ignored by the ALJ that plaintiff should not engage in any "prolonged standing."  AR at 663.  To do so would contravene the *Orn* medical hierarchy outlined above.  Finally, it is possible that Mr. Segall may have taken liberties with the report of Dr. Ashley who reported "that "radiographs cervical spine show degenerative intervertebral disc changes."  Mr. Segall decided to report that Dr. Ashley's report showed "mild degenerative intervertabral disc changes."  AR at 468.  This is an issue for the ALJ to determine on remand.

The ALJ rejected Ms. Plaisier's opinions for reasons that do not withstand scrutiny.

### 4.   *Mark Heilbrunn, M.D.*

Plaintiff also argues that the disability evaluation of Dr. Heilbrunn performed on March 3, 2009 AR at 607-12 and submitted to the Appeals Council mandates a finding that plaintiff could not perform at a light exertional level.  The Commissioner asserts that because this is after the time frame in question, it is not material.  The report by Dr. Heilbrunn would seem to confirm the opinions of Ms. Plaisier.  However, this decision is properly left to the ALJ.

REPORT AND RECOMMENDATION - 13

Because this matter is being remanded for further proceedings, the ALJ should have the first opportunity to determine its relevance to the time period in question.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 2nd day of June, 2010.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14